## Vendig v. Union League of Philadelphia and Mathers Coal Co.

*Negligence — Sidewalks — Coal hole — Pedestrian—Evidence—Owner of property—Contributory negligence.*

1. A coal company cannot be held liable for injuries to a pedestrian who fell into a coal hole in a sidewalk where there is no evidence whatever that a driver or other employee of the company had removed or replaced the lid of the coal hole into which the injured person fell.

2. The primary duty of keeping a sidewalk in safe condition rests upon the owner or occupier of the abutting premises.

3. Where a coal hole has been opened in a sidewalk for the delivery of coal, it is the duty of the owner of the abutting property to see that the lid of the hole is properly replaced so that no accident may happen to persons passing over the sidewalk.

4. A person falling into a coal hole in a sidewalk on a dark evening cannot be charged with contributory negligence where she testifies that she was looking where she was going, and, although she did not have her eyes on the sidewalk, it appeared to her that the coal hole was covered.

Memorandum of reasons for having entered judgment *n. o. v.* in favor of Frank F. Mathers, trading as Mathers Coal Company, defendant, and also for having discharged the rule taken by co-defendant, the Union League, for a new trial and for having overruled its motion for judgment *n. o. v.* C. P. No. 2, Phila. Co., June T., 1926, No. 14391.

*Thomas C. Egan,* for plaintiff.

*Harry S. Ambler,* for Frank F. Mathers, trading as Mathers Coal Company, defendant.

*Benjamin O. Frick,* for Union League, co-defendant.

LEWIS, J., Nov. 16, 1927.—The plaintiff sustained injuries by falling through a coal hole in the sidewalk of the property owned by the Union League of Philadelphia; the lid covering the opening tilted when she stepped on it. It is our view that, in order to hold the defendant coal company liable, more would have to be shown than merely that it had delivered coal to the owner on the day of the accident, that there was no other coal delivered on that day, and that it was probably the presence of pieces of coal that prevented the lid from being properly replaced. There is not the slightest evidence that a driver or other employee of the coal company removed or replaced the lid, such as there was, for example, in Martin *v.* Letter, 282 Pa. 286, where Mr. Justice Walling said: "The accident happened less than one minute after defendant's servant had left the place, and the evidence of his failure to safely replace the lid, which he had removed, justified the jury's finding that defendant was negligent." As was also pointed out in that case, "one who creates a dangerous condition in a public sidewalk is liable for the natural result thereof, regardless of the liability of the abutting property owner." Judgment was entered by us for the Mathers Coal Company for the reason that a case against it had not been made out by the plaintiff.

The situation with respect to the Union League of Philadelphia, however, is quite different. The primary duty of keeping a sidewalk in safe condition rests upon the owner or occupier of the abutting premises: Green *v.* Philadelphia, 63 Pa. Superior Ct. 121. The case presented by the plaintiff here is practically on all fours with that which existed in Strohm *v.* Haverstick, 44 Pa. Superior Ct. 166, wherein the court said:

"It seems clear enough that when the defendant opened the coal hole for the receipt of his coal and turned over, for the time being, to the driver of the coal wagon his own obligation to reasonably guard the dangerous open-

ing in the sidewalk, he did not cease to be responsible for any negligent act or omission of that driver. When the latter had discharged his load, he attempted to restore the metal covering to its accustomed place. To the eye of the passerby it appeared as if he had succeeded. But the unfortunate experience of the plaintiff proves he did not.

"As we have seen, the defendant was doubtless justified in assuming that when the heavy iron covering had been properly replaced on the collar provided for it, the sidewalk would be safe. What duty did he then owe to see that the covering was securely replaced? Was it his duty, in the exercise of reasonable care, to examine and see that the shoulder of the rim was free from dust and débris from the coal that had gone through the opening? Would a man of reasonable prudence and care have foreseen that such an accumulation was the probable result of unloading the coal in the quantity and manner shown by the evidence?

"These questions, we think, could be properly answered only by a jury after having been adequately instructed by the trial judge. The standard of defendant's duty, in many particulars, was not so well defined that the trial court could determine, as matter of law, that negligence had or had not been shown." See, also, Morse v. Chessman, 86 Pa. Superior Ct. 256.

It appeared from the testimony that the superintendent of the Union League knew that deliveries of coal were being made on the day of the accident, and it also appeared that the lid was placed firmly immediately after the accident, so that the fact that it tilted on this occasion is a circumstance corroborating the evidence that it had not been properly replaced. See Martin v. Letter, 282 Pa. 286.

We think it equally clear that the plaintiff was not guilty of any contributory negligence. The accident happened about 6 o'clock on the evening of Jan. 9, 1926, so that it was quite dark. The plaintiff testified that she was looking where she was going, and although she did not have her eyes on the sidewalk, it appeared to her that the coal shute was covered. The exercise of due care under such circumstances did not require the plaintiff, as she was walking along the sidewalk, "to keep her face glued to the sidewalk immediately in front of her toes:" Gorman et al. v. Philadelphia, 82 Pa. Superior Ct. 136, 139; Glatfelter v. North York, 85 Pa. Superior Ct. 353.